UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ANN SWEENER,

                Plaintiff,

    -against-                            1:17-CV-0532 (LEK/DJS)

SAINT-GOBAIN PERFORMANCE
PLASTICS CORPORATION, *et al.*,

                Defendants.

---

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

This action is one of several before the Court stemming from the contamination of groundwater with perfluorooctanoic acid ("PFOA") in the Village of Hoosick Falls, New York. Dkt. No. 16 ("Amended Complaint") ¶¶ 16–18. Plaintiff Ann Sweener alleges that defendants Saint-Gobain Performance Plastics Corp. and Honeywell International Inc. contaminated the Village's groundwater by discharging PFOA from one or more manufacturing facilities they operated within the Village. Id. According to Plaintiff, this contamination caused her to suffer personal injuries, including uterine cancer. Id. ¶ 69. Presently before the Court is Defendants' motion to dismiss the Amended Complaint as time-barred. Dkt. Nos. 27 ("Motion"), 27-1 ("Memorandum"). For the reasons that follow, the Motion is granted in part and denied in part.

### II.    BACKGROUND

#### A.  Factual Background

The following facts are taken from the allegations in the Amended Complaint, which are

assumed to be true when deciding a motion to dismiss for failure to state a claim. Bryant v. N.Y.

State Educ. Dep't, 692 F.3d 202, 210 (2d Cir. 2012).

PFOA is a man-made chemical used, among other things, "to make fabrics water and

stain resistant." Am. Compl. ¶¶ 20–21. The substance is also "used in the process of making

Teflon and similar chemicals." Id. ¶ 20. According to Plaintiff, "[t]here are numerous health risks

associated with chronic exposure to PFOA and these risks are present even when ingested at

seemingly low levels." Id. ¶ 22. Studies have found that people exposed to PFOA "have

increased risk of" several types of cancer, including uterine and ovarian cancers. Id. ¶ 25. In

2016, the U.S. Environmental Protection Agency ("EPA") "issued a lifetime drinking water

health advisory of 70 parts per trillion [("ppt")] for human exposure to PFOA." Id. ¶ 23.

The New York State Department of Health has identified a small factory at 14 McCaffrey

Street as "a probable source" of Hoosick Falls's PFOA contamination. Id. ¶ 28. A second facility

at 1 Liberty Street has been identified as a "potential [contamination] site, meaning that

preliminary information suggests that the site and surrounding areas may be contaminated." Id.

¶ 30. Both sites are presently owned by Saint-Gobain and were previously owned by Honeywell.

Id. ¶¶ 30, 32–35. Samples from the McCaffrey Street facility revealed PFOA levels

approximately forty times greater than EPA guidelines. Id. ¶ 31.

Between 1986 and 2004, Defendants utilized PFOA to manufacture stain resistant fabrics

and other products at the McCaffrey Street facility. Id. ¶¶ 32–37, 40. Plaintiff alleges that

Defendants' industrial waste disposal practices "resulted in the discharged of PFOA into the soil,

and, ultimately, into the local water." Id. ¶¶ 39, 43. Due to Defendants' conduct, Plaintiff alleges,

the Village's municipal water supply contains PFOA levels that far exceed the EPA's health

2

advisory limit of 70 ppt. Id. ¶¶ 48–49. Tests conducted in June 2015 revealed PFOA levels more

than eight times that level. Id. ¶¶ 47–49.

The Village's municipal water supply provides drinking water to nearly 95% of its

approximately 3,500 residents. Id. ¶¶ 44–45. In November 2015, the EPA recommended that

Village residents no longer use the municipal water supply for drinking and cooking due to the

high levels of PFOA. Id. ¶ 50. In late 2015, Saint-Gobain began providing free bottled water to

Village residents, and agreed to fund the installation of a filtration system on the municipal water

system to remove PFOA. Id. ¶ 51. In January 2016, New York State designated the McCaffrey

Street facility a state Superfund site. Id. ¶ 53. The State also classified PFOA as a hazardous

substance by emergency regulation. Id. ¶ 54.

Plaintiff has resided in Hoosick Falls continuously since 1990. Id. ¶ 60. During that time,

she utilized the municipal water supply for drinking, cooking, bathing, washing clothes, and

gardening. Id. ¶ 61. As a result, she was unknowingly exposed to PFOA for approximately

twenty-five years. Id. ¶ 62. On August 25, 2010, Plaintiff was diagnosed with stage III uterine

cancer. Id. ¶ 63. She underwent chemotherapy from October 2010 to January 2011, and received

radiation therapy between April 2011 and March 2015. Id. ¶¶ 64–65. Following the discovery of

PFOA in the Village's drinking water, Plaintiff was tested for PFOA in February 2016. Id. ¶ 66.

In May 2016, Plaintiff received the test results, which revealed PFOA levels that were

approximately thirty times the national average. Id. ¶ 67.

### B. Procedural History

Plaintiff commenced this action on May 15, 2017. Dkt. No. 1 ("Complaint"). Defendants

moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure for failure to state a claim on June 30, 2017. Dkt. No. 13 ("First Motion"). On July 10, 2017, Plaintiff filed the Amended Complaint, Am. Compl., mooting the First Motion, Dkt. No. 17 ("July 10 Order").

On August 7, 2017, Defendants moved to dismiss the Amended Complaint for failure to state a claim. Mot. Specifically, Defendants argue that Plaintiff's claims are untimely under New York law and must be dismissed. See generally Mem. Plaintiff opposes the Motion, Dkt. No. 32 ("Opposition"), and Defendants submitted a reply, Dkt. No. 33 ("Reply").

## III.    LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of the plaintiff. Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). Plausibility, however, requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556.

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct

based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. Id. at 678–79.

## IV.   DISCUSSION

Plaintiff alleges that Defendants' contamination of the Village's municipal water supply with PFOA caused her to suffer "severe and permanent" personal injuries, including uterine cancer. Am. Compl. ¶ 69. She brings claims under New York law for negligence, id. ¶¶ 77–89, strict liability, id. ¶¶ 90–96, and private nuisance, id. ¶¶ 97–102.[1] Defendants argue that Plaintiff's claims are untimely under New York Civil Practice Law and Rules ("CPLR") § 214-c and 42 U.S.C. § 9658, a provision of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") that preempts state statutes of limitations for certain claims based on exposure to harmful substances. Mem. at 3–14. Additionally, Defendants argue that Plaintiff cannot rely on CPLR § 214-f to revive her claims because construing this provision to revive time-barred claims would violate the Due Process Clause of the New York State Constitution. Id. at 15–22.

"When a defendant raises a statutory bar such as the statute of limitations as an affirmative defense, dismissal under Rule 12(b)(6) is appropriate if 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" NXIVM Corp. v. Foley, No. 14-CV-1375, 2015 WL 12748008, at *5 (N.D.N.Y. Sept. 17, 2015) (Kahn, J.) (quoting Staehr v. Hartford Fin. Servs. Grp., 547

---

[1]  In light of the Court's decisions in Baker v. Saint-Gobain Performance Plastics Corp., 232 F. Supp. 3d 233, 249 (N.D.N.Y. 2017) (Kahn, J.), and Benoit v. Saint-Gobain Performance Plastics Corp., No. 16-CV-1057, 2017 WL 3316132, at *11–12 (N.D.N.Y. Aug. 2, 2017) (Kahn, J.), Plaintiff has withdrawn her nuisance claim. Opp'n at 25.

F.3d 406, 425 (2d Cir. 2008). Because the statute of limitations is an affirmative defense, a

defendant bears the burden of showing that a claim is untimely. Bano v. Union Carbide Corp.,

361 F.3d 696, 710 (2d Cir. 2004). The Court considers each of Defendants' arguments below.

**A. Section 214-c**

*1. New York's Toxic Tort Limitations Period*

Defendants first argue that Plaintiff's claims are untimely under § 214-c. Mem. at 3–9.

Enacted in 1986, § 214-c, "New York's toxic tort remedial Statute of Limitations," Jensen v.

Gen. Elec. Co., 623 N.E.2d 547, 549 (N.Y. 1993), provides a three-year period in which to

commence actions seeking damages for "personal injury or injury to property caused by the latent

effects of exposure to any substance or combination of substances," § 214-c(2). "[T]he time for

initiating a cause of action for damages resulting from exposure to a harmful substance begins to

run from the date that the 'injury' was discovered or could have been discovered with reasonable

diligence." Matter of New York Cty. DES Litig., 678 N.E.2d 474, 475 (N.Y. 1997).

"The statute was enacted to 'provide relief to injured New Yorkers whose claims would

otherwise be dismissed for untimeliness simply because they were unaware of the latent injuries

until after the limitation period had expired.'" Jenson, 623 N.E.2d at 549 (quoting 1986 N.Y.

Legis. Ann. at 287 (statement of Sen. R.B. Stafford)). Before its adoption, the limitations period

"began to run as of the date of exposure, regardless of the date on which the injury was

discovered." Id. at 550 (collecting cases). In Matter of New York County DES Litigation, the

New York Court of Appeals held that the three-year period under § 214-c(2) begins to run "when

the injured party discovers the primary condition on which the claim is based." 678 N.E.2d

at 475.

The statute provides a limited exception where the cause of injury is not immediately known. If a plaintiff discovers the cause of injury within five years of discovering her injury, then she may commence an action within one year of discovering the previously unknown cause, assuming additional conditions are satisfied. § 214-c(4); see also Gaillard v. Bayer Corp., 986 F. Supp. 2d 241, 250 (E.D.N.Y. 2013) ("[Section 214-c(4)] provides that any extension of the limitations period requires that 'the discovery of the cause of injury' be 'alleged to have occurred less than five years after discovery of the injury.'"). In sum, New York plaintiffs seeking damages for latent injury caused by toxic substances have a maximum of six years from the discovery of injury to commence an action. A plaintiff has five years from discovery of injury to determine the cause, if it is not immediately apparent, and then one year in which to file suit.

### 2. Timeliness of Plaintiff's Claims under § 214-c

Plaintiff commenced this action on May 15, 2017. Compl. She alleges that her suit is timely under § 214-c because "she did not discover and could not have reasonably discovered her high levels of PFOA before May, 2016," when she received her blood test results. Am. Compl. ¶ 73. Defendants argue that the latest date on which she could have brought this action was six years after her August 25, 2010 cancer diagnosis, or August 25, 2016. Mem. at 3–6. Resolution of this dispute turns on whether Plaintiff discovered her injury when she was diagnosed with cancer in 2010 or when she learned she had high levels of PFOA in her blood. The Court agrees that Plaintiff's claims are not timely under § 214-c.

The Amended Complaint suggests that Plaintiff's injury occurred in May 2016 because that is when she learned that she had high levels of PFOA in her blood. Am. Compl. ¶ 73. However, New York law is clear that, for purposes of § 214-c, "discovery of injury" occurs

"when the injured party discovers the primary condition on which the claim is based." Matter of New York Cty. DES Litig., 678 N.E.2d at 475. The plaintiff in Matter of New York County DES Litigation had a variety of reproductive health problems, suffering multiple miscarriages between 1980 and 1986 and losing a preterm baby in 1988. Id. In 1992, she sued several manufactures of DES, a drug her mother had taken when pregnant that, it was later discovered, caused latent health problems in patients' offspring. Id. at 475–76. Plaintiff was unaware that DES may have been the cause of her health problems until 1989, when her physician noted that "her medical history revealed 'classic symptoms of DES.'" Id. at 476. She argued that her time for commencing her action under § 214-c did not commence until 1989 when she learned that DES may have caused her condition. Id. The New York Court of Appeals rejected this argument, holding "the only reasonable inference is that when the Legislature used the phrase 'discovery of the injury' it meant discovery of the physical condition and not, as plaintiff argue[d], the more complex concept of discovery of both the condition and the nonorganic etiology of that condition." Id. at 478. "Thus, in many cases, discovery of an injury occurs when the plaintiff is actually diagnosed as suffering from a particular condition or disease, even though unaware of its cause." Bartlett v. Moore Bus. Forms, Inc., No. 96-CV-1632, 2000 WL 362022, at *4 (N.D.N.Y. Mar. 30, 2000).

"The fact that there may be a delay before 'the connection between th[e] symptoms and the injured's exposure to a toxic substance is recognized' does not delay the start of the limitations period." Bano, 361 F.3d at 709 (alterations in original) (quoting Matter of New York Cty. DES Litig., 678 N.E.2d 474). "All that is necessary to start the limitations period [of 214-c(2)] is that plaintiff be aware of the primary condition for which damages are sought." Id.

(alterations in original) (quoting <u>Whitney v. Quaker Chem. Corp.</u>, 683 N.E.2d 768, 769

(N.Y. 1997)); <u>see also</u> <u>Gaillard v. Bayer Corp.</u>, 986 F. Supp. 2d 241, 250 (E.D.N.Y. 2013) ("The

statute provides that any extension of the limitations period requires that 'the discovery of the

cause of injury' be 'alleged to have occurred less than five years after discovery of the

injury.' . . . To the extent plaintiff again attempts to argue that she was not aware of the cause of

her symptoms, knowledge of the cause is irrelevant to this requirement." (quoting § 214-c(4));

<u>Martin v. 159 W. 80 Street Corp.</u>, 770 N.Y.S.2d 720, 722 (App. Div. 2004) ("The three-year

statute of limitations of CPLR 214-c(2) runs from the time a plaintiff discovers an injury, that is,

from the time she realizes that she has the physical manifestations of illness, regardless of when

she learns of the cause." (collecting cases)).

Here, the "primary condition for which damages are sought," <u>Matter of New York Cty.</u>

<u>DES Litig.</u>, 678 N.E.2d at 475, is Plaintiff's cancer, which was diagnosed in August 2010. Thus,

even applying § 214-c(4)'s unknown cause exception, Plaintiff's claims expired in August 2016

at the latest. <u>See</u> <u>Freier v. Westinghouse Elec. Corp.</u>, 303 F.3d 176, 184 (2d Cir. 2002)

("[Section] 214-c(4) gives the plaintiff five years after the discovery (actual or constructive) of

the injury to ascertain its cause. If he does not (or cannot) discover the etiology within five years,

then he is barred by the statute of limitations."). Because she commenced this action

approximately nine months later in May 2017, her claims are untimely under § 214-c.

### 3. Equitable Tolling

Plaintiff argues that the limitations period under § 214-c should be equitably tolled.

Opp'n at 14–20. "Under the doctrine of equitable tolling, a complainant may be allowed to file

his or her claim outside the applicable limitations period if, because of some action on the

defendant's part, the complainant was unaware that the cause of action existed." Long v. Frank, 22 F.3d 54, 58 (2d Cir. 1994) (citing Dillman v. Combustion Eng'g, Inc., 784 F.2d 57, 60 (2d Cir. 1986)). Equitable tolling applies to Plaintiff's claims, she argues, because Defendants "fraudulently conceal[ed] PFOA disposal into the municipal water system for decades with no remorse, and with no warning to the residents of Hoosick Falls." Opp'n at 14. Defendants counter that Plaintiff has not alleged "that subsequent and specific actions by [D]efendants somehow kept [her] from timely bringing suit." Mem. at 8 (quoting McCormick v. Favreau, 919 N.Y.S.2d 572, 577 (App. Div. 2011)). Defendants also argue in their Reply that equitable estoppel does not apply to claims governed by § 214-c. Reply at 2–3. As explained below, the Court agrees with Defendants that equitable estoppel does not apply to Plaintiff's claims.

The Court need not address Defendants' argument that equitable estoppel does not apply to claims governed by § 214-c, Reply at 2–3, because "[a]rguments raised for the first time in reply papers need not be considered," Tillery v. NYS Office of Alcohol & Substance Abuse Servs., No. 13-CV-1528, 2014 WL 2434954, at *3 n.6 (N.D.N.Y. May 30, 2014) (Kahn, J.) (citing United States v. Yousef, 327 F.3d 56, 115 (2d Cir. 2003)). In any event, the Court disagrees with Defendants' interpretation of New York law. While at least one federal case supports Defendants' contention, see In re Ephedra Prod., No. 04-MD-1598, 2006 WL 944705, at *1 (S.D.N.Y. Apr. 10, 2006) ("[T]he New York Court of Appeals has held that CPLR § 214-c is the exclusive remedy for a plaintiff's late discovery of injury caused by exposure to a substance." (citing Matter of New York Cty. DES Litig., 678 N.E.2d at 475)), vacated sub nom. Giordano v. Mkt. Am., Inc., 289 F. App'x 467 (2d Cir. 2008), New York courts do not appear to have expressly held that claims under § 214-c cannot be equitably tolled. Defendants overstate

the Appellate Division's holding in <u>Byrd v. Pinecrest Manor</u>, 918 N.Y.S.2d 558 (App. Div. 2011). <u>Compare</u> Reply at 3 (describing <u>Byrd</u> as "holding that, where the statute of limitations under CPLR 214-c has run, 'the doctrine of equitable estoppel has no application'"), <u>with</u> <u>Byrd</u>, 918 N.Y.S.2d at 560 ("Contrary to the plaintiffs' contention, the doctrine of equitable estoppel has no application *under the circumstances presented.*" (emphasis added)). The <u>Byrd</u> court declined to apply equitable estoppel because it was not justified by the facts presented, not because the doctrine does not apply to claims under § 214-c.

While courts have consistently declined to toll § 214-c's limitations period, none have held that it cannot be tolled as a matter of law as Defendants argue. <u>E.g.</u>, <u>Thoma v. Town of Schodack</u>, 776 N.Y.S.2d 109, 111 (App. Div. 2004) ("Neither does the doctrine of equitable estoppel preclude defendant from raising a statute of limitations defense [under § 214-c]."); <u>see also</u> <u>Plumbing Supply, LLC v. Exxonmobil Oil Corp.</u>, No. 14-CV-3674, 2016 WL 1611490, at *4–5 (S.D.N.Y. Apr. 21, 2016) (concluding that the plaintiff's allegations did not support equitable estoppel of a claim governed by § 214-c); <u>Gaillard v. Bayer Corp.</u>, 986 F. Supp. 2d 241, 250 n.7 (E.D.N.Y. 2013) ("[T]here are no alleged grounds for equitable estoppel *in this case.*" (emphasis added)); <u>Mancuso v. Consol. Edison Co. of New York</u>, 905 F. Supp. 1251, 1260 (S.D.N.Y. 1995), ("[T]his case is one of the rare cases where the appropriate course is to grant summary judgment denying plaintiffs the benefit of equitable estoppel."), <u>aff'd</u> 216 F.3d 1072 (2d Cir. 2000). Notably, the Court has been unable to locate a single New York case tolling the limitations period under § 214-c. On the other hand, the fact that courts routinely consider whether tolling is appropriate suggests that Defendants are mistaken and a claim governed by § 214-c may be tolled where appropriate. In light of the cases discussed above, the Court must

consider whether the facts alleged in the Amended Complaint justify tolling the limitations period under § 214-c.

"Equitable estoppel is appropriate where the plaintiff is prevented from filing an action within the applicable statute of limitations due to his or her reasonable reliance on deception, fraud or misrepresentations by the defendant." Putter v. N. Shore Univ. Hosp., 858 N.E.2d 1140, 1142 (N.Y. 2006). "To invoke equitable estoppel, the plaintiff has 'to establish that subsequent and specific actions by [the] defendant [] somehow kept [him or her] from timely bringing suit.'" Robare v. Fortune Brands, Inc., 833 N.Y.S.2d 753, 755 (App. Div. 2007) (alterations in original) (quoting Zumpano v. Quinn, 849 N.E.2d 926, 929 (N.Y. 2006)). "For the doctrine to apply, a plaintiff may not rely on the same act that forms the basis for the claim—the later fraudulent misrepresentation must be for the purpose of concealing the former tort." New York State Workers' Comp. Bd. v. Fuller & LaFiura, CPAs, P.C., 46 N.Y.S.3d 266, 273 (App. Div. 2017) (quoting Ross v. Louise Wise Servs., Inc., 868 N.E.2d 189 (N.Y. 2007)), lv. denied 2011 WL 4978965 (N.Y. 2011).

Plaintiff argues that equitable tolling is justified here because Defendants "fraudulently conceal[ed] PFOA disposal into the municipal water system." Opp'n at 14. Specifically, Plaintiff alleges that Defendants "withheld information from the public" regarding the contamination. Opp'n at 15; see also Am. Compl. ¶¶ 71 ("Defendants failed to warn of the dangerous nature of PFOA and failed to give instruction to Plaintiff and her fellow Hoosick Falls citizens on the avoidance of PFOA."), 72 ("Because of Defendants' failure to disclose and active concealment of the true character, quality and nature of the release of PFOA, Defendants are estopped from relying on any Statute of Limitations in their defense of this action."). Plaintiff's theory is that

12

Defendants failed to disclose that they had contaminated the Village's water supply. "Typically, 'mere silence or failure to disclose the wrongdoing is insufficient'" to support equitable tolling. Indoafric Exps. Private Co. v. Citibank, N.A., 696 F. App'x 551, 552 (2d Cir. 2017) (quoting Ross, 868 N.E.2d at 198); see also Gaia House Mezz LLC v. State St. Bank & Tr. Co., 720 F.3d 84, 90 (2d Cir. 2013) ("[A] party's silence does not give rise to a claim of equitable estoppel."). "Where a defendant has a "duty to speak," however, and fails to do so, a plaintiff's reliance on a defendant's silence can provide grounds for equitable tolling." Indoafric Exps., 696 F. App'x at 552 (quoting Gaia House, 720 F.3d at 90).

Plaintiff does not allege any specific fraudulent act to support tolling the limitations period under § 214-c. As the cases above make clear, Defendants' failure to disclose their alleged misconduct cannot support equitable tolling. E.g., Burpee v. Burpee, 578 N.Y.S.2d 359, 362 (Sup. Ct. 1991) ("The doctrine of equitable estoppel usually comes into play when some conduct by a defendant, *after his initial wrongdoing*, has prevented the plaintiff from discovering or suing upon the *initial wrong*." (quoting Smith v. Smith, 830 F.2d 11, 13 (2d Cir. 1987))); see also Quinn, 849 N.E.2d at 930 ("Conduct like this might be morally questionable[,] . . . but it is not fraudulent concealment as a matter of law. A wrongdoer is not legally obliged to make a public confession, or to alert people who may have claims against it, to get the benefit of a statute of limitations.").

Plaintiff's theory of misrepresentation by omission is not unlike the one rejected in Bano v. Union Carbide Corp., No. 99-CV-1329, 2003 WL 1344884, at *6 (S.D.N.Y. Mar. 18, 2003), aff'd in part, vacated in part, 361 F.3d 696 (2d Cir. 2004). The Bano plaintiffs brought claims under federal law and New York common law based on a toxic gas leak at the defendant's

industrial plant. Id. at *1. The court explained that "[w]here no fiduciary relationship exists between the parties that would place an obligation of disclosure on defendants, plaintiffs must show *actual misrepresentation* by the defendant." Id. at *6 (citing Jordan v. Ford Motor Co., 426 N.Y.S.2d 359, 360–61 (App. Div. 1980)). Judge Keenan concluded that the plaintiff's allegation that defendants "withheld information regarding the 'scale of contamination at the . . . facility,'" did not justify equitable tolling because the complaint did not allege that the defendant "made any misrepresentation to plaintiffs." Id. at *7. Equitable estoppel would have applied, the court explained, if defendants had "published inaccurate information leading [the plaintiff] to believe the cause of her injuries was wholly unrelated to any contamination at the plant." Id.; see also Gen. Stencils v. Chiappa, 219 N.E.2d 169, 170–71 (N.Y. 1966) (holding that the defendant bookkeeper who had stolen from the plaintiff over many years and concealed the theft by misrepresenting the plaintiff's accounts was estopped from asserting a statute of limitations defense because her ongoing, active concealment had prevented the plaintiff from discovering the fraud).

Like the Bano plaintiffs, Plaintiff has not identified any public statements made by Defendants that misrepresented their handling of PFOA or the scale of contamination. Nor is there any indication that Defendants were fiduciaries or had any other special relationship requiring them to accurately disclose their mishandling of PFOA. Therefore, Plaintiff has failed to plead facts to support an inference of fraudulent concealment and cannot assert equitable estoppel.

14

**B.  Section 214-f**

Because Plaintiff's claims are not timely under § 214-c, the Court must consider whether they can be brought under § 214-f. Section 214-f provides that "an action to recover personal damages for injury caused by contact with or exposure to any substance or combination of substances contained within an area designated as a superfund site" under New York or federal law "may be commenced by the plaintiff within the period allowed pursuant to [§ 214-c] or within three years of such designation of such an area as a superfund site, whichever is latest." Enacted in July 2016, the so-called "Hoosick Falls Legislation" was, according to Plaintiff, "created specifically for the Superfund sites in Hoosick Falls as a result of PFOA contamination." Opp'n at 6.

Plaintiff's claims are plainly timely under § 214-f because she commenced this action in May 2017, less than a year and a half after New York designated the Superfund site in Hoosick Falls. Am. Compl. ¶ 53. However, Defendants argue that by reviving claims that are otherwise untimely, § 214-f violates their due process rights under the New York State Constitution. Mem. at 17–22. The Due Process Clause of the New York Constitution provides that "[n]o person shall be deprived of life, liberty or property without due process of law." N.Y. Const. art. I, § 6. Under New York law, statutes that revive otherwise time-barred claims are subject to due process scrutiny. See Hymowitz v. Eli Lilly & Co., 539 N.E.2d 1069, 1079–80 (N.Y. 1989) (rejecting a due process challenge to a statute that provided an additional year in which to bring expired claims based on latent effects of several drugs and chemicals).[2]

_____

[2]  The revival of time-barred claims does not violate due process under the Fourteenth Amendment to the United States Constitution. Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 229 (1995) (citing Chase Sec. Corp. v. Donaldson, 325 U.S. 304 (1945)).

As Defendants correctly note, "the Second Circuit [recently] observed that New York courts have applied two different standards for evaluating due process challenges to revival statutes: (1) the 'serious injustice' standard under [Gallewski v. H. Hentz & Co., 93 N.E.2d 620, 624 (N.Y. 1950)] and (2) the standard of 'reasonableness' articulated in [Robinson v. Robins Dry Dock & Repair Co., 144 N.E. 579 (N.Y. 1924)]." Mem. at 16 (citing In re World Trade Ctr. Lower Manhattan Disaster Site Litig., 846 F.3d 58, 69 (2d Cir. 2017)). They argue that § 214-f violates due process because it fails to satisfy either standard. Id. at 17–22.

The New York Court of Appeals recently clarified the standard under which New York courts must analyze a due process challenge to a claim revival statute. In response to two certified questions from the Second Circuit, the Court of Appeals explained that "[a]ny purported dichotomy between Robinson's and Gallewski's holdings is illusory." In re World Trade Ctr. Lower Manhattan Disaster Site Litig., 2017 WL 5574387, at *14–15, __ N.E.3d __ (N.Y. 2017). Reviewing its claim revival jurisprudence, the court explained that "[t]he salient facts in each [case] . . . fall into the same pattern. First, there existed an identifiable injustice that moved the legislature to act. . . . Second, in each case, the legislature's revival of the plaintiff's claims for a limited period of time was reasonable in light of that injustice." Id. at *15 (citing Hymowitz, 539 N.E.2d at 1079–80; Gallewski, 93 N.E.2d at 625; Robinson, 144 N.E. at 583; McCann v. Walsh Constr. Co., 123 N.Y.S.2d 509, 510–11 (App. Div. 1953), aff'd, 119 N.E.2d 596 (N.Y. 1954)). The court concluded that "a claim-revival statute will satisfy the Due Process Clause of the State Constitution if it was enacted as a reasonable response in order to remedy an injustice." Id. "A more heightened standard," the court explained, "would be too strict. In the context of a claim-revival statute, there is no principled way for a court to test whether a particular injustice is

'serious' or whether a particular class of plaintiffs is blameless; such moral determinations are left to the elected branches of government. " Id.

The Court is unaware of any New York court ever striking down a claim-revival statute under the Due Process Clause. See id. at *19 (Rivera, J., concurring) ("Indeed, every time this Court has considered the issue in the past it has upheld the legislature's claim-revival statute as a proper response to the problem the legislature sought to address."); see also In re World Trade Ctr., 846 F.3d at 69 ("[N]either party has cited to us, nor have we found, any case in which any New York state court has struck down any statute reviving expired claims.").

In light of the standard clarified in In re World Trade Center, the Court concludes that § 214-f does not violate Defendants' due process rights because the provision "was enacted as a reasonable response in order to remedy an injustice." 2017 WL 5574387, at *15. Section 214-f was enacted to allow individuals such as Plaintiff, who suffer latent injuries stemming from environmental contamination, to pursue claims that would otherwise be time-barred simply because a defendant's tortious conduct was unknown. See Sponsor Memo, S. 6824A (N.Y. 2016) ("Individuals in Hoosick Falls should not be denied any legal recourse simply because the statute of limitations has run on a claim they never knew that they had."), available at https://www.nysenate.gov/legislation/bills/2015/s6824/amendment/a. Allowing such plaintiffs three years after the designation of a Superfund site in which to bring their claims is plainly reasonable under New York law. See Hymowitz, 539 N.E.2d at 1079–80 (rejecting a due process challenge to a statute that granted an additional year in which to bring claims for personal latent personal injuries caused by harmful exposure); McCann, 123 N.Y.S.2d at 510–11 (same). While § 214-f extends the limitations period for three years rather than one, nothing in the cases

17

discussed above suggests that the modest addition of two years in which to commence suit is unreasonable.

Defendants' argument that § 214-f is unreasonable because it "key[s] the statute of limitations to prospective superfund designations by third-party agencies, rather than any action or conduct of the parties," Mem. at 19, is unpersuasive. Defendants cite no cases to suggest that limitations periods must be triggered by parties' actions in order to be valid. In fact, New York cases suggest the opposite. E.g., Gallewski, 93 N.E.2d at 625 (upholding a statute that retroactively tolled the statute of limitations for the period during which the plaintiff's country was under German occupation during World War II); Robinson, 144 N.E. at 583 (rejecting a due process challenge to statute that revised claims in response to a U.S. Supreme Court decision). The Court has considered Defendants' additional objections, none of which support barring Plaintiff's claims.[3]

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion (Dkt. No. 27) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED**, that Plaintiff's causes of action for negligence and strict liability survive Defendant's Motion, and Plaintiff's cause of action for private nuisance is **DISMISSED with prejudice**; and it is further

---

[3] Because Plaintiff's claims are timely under § 214-f, the Court need not address whether CERCLA preempts New York's statute of limitations or whether Plaintiff's claims are timely under CERCLA. Mem. at 9–14; Opp'n at 20–25.

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties pursuant to the Local Rules.

**IT IS SO ORDERED.**

DATED:       February 07, 2018
             Albany, New York

Lawrence E. Kahn
U.S. District Judge

19