UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────

ANN SWEENER,

                                Plaintiff,

    -against-                                    1:17-CV-532 (LEK/DJS)

SAINT-GOBAIN PERFORMANCE
PLASTICS CORPORATION, *et al.*,

                                Defendants.
───────────────────────────────────────────

## DECISION AND ORDER

**I.   INTRODUCTION**

      This action is one of several before the Court stemming from the contamination of groundwater with perfluorooctanoic acid ("PFOA") in the Village of Hoosick Falls, New York. Dkt. No. 16 ("Amended Complaint") ¶¶ 16–18. Plaintiff Ann Sweener alleges that defendants Saint-Gobain Performance Plastics Corp. and Honeywell International Inc. contaminated the Village's groundwater by discharging PFOA from one or more manufacturing facilities they operated within the Village. Id. According to Plaintiff, this contamination caused her to suffer personal injuries, including uterine cancer. Id. ¶ 69. On February 21, 2018, Defendants moved to certify for interlocutory appeal the Court's February 7, 2018 memorandum-decision and order. Dkt. Nos. 37 ("Certification Motion"), 37-1 ("Memorandum"); see also Dkt. No. 34 ("February Order"). For the reasons that follow, Defendants' Motion is denied.

**II.   BACKGROUND**

      The Court assumes familiarity with the facts underlying this action and provides as background the procedural history giving rise to the Certification Motion. On August 7, 2017,

Defendants moved to dismiss the Amended Complaint. Dkt. No. 27 ("Motion to Dismiss"). Defendants argued that Plaintiff's claims were untimely under New York Civil Practice Law and Rules ("CPLR") § 214-c and 42 U.S.C. § 9658, a provision of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") that preempts state statutes of limitations for certain claims based on exposure to harmful substances. Dkt. No. 27-1 ("Dismissal Memorandum") at 3–14. Additionally, Defendants argued that Plaintiff could not rely on CPLR § 214-f to revive her claims because construing this provision to revive time-barred claims would violate the Due Process Clause of the New York State Constitution. Id. at 15–22.

In the February Order, the Court found "that Plaintiff's claims are not timely under § 214-c." Feb. Order at 7. The Court observed that § 214-c provided "a maximum of six years from the discovery of injury to commence an action." Id. at 7. The Court then observed that, "for purposes of § 214-c, 'discovery of injury' occurs 'when the injured party discovers the primary condition on which the claim is based.'" Id. at 7–8 (quoting Bano v. Union Carbide Corp., 361 F.3d 696, 709 (2d Cir. 2004)). The "primary condition on which the claim is based" in Plaintiff's case was her cancer, "which was diagnosed in August 2010." Id. at 9. The statute of limitations therefore ran on Plaintiff's claims in August 2016, and her claims were untimely under § 214-c because she did not commence this action until May 2017. Id.

The Court then turned to § 214-f, which "provides that 'an action to recover personal damages for injury caused by contact with or exposure to any substance or combination of substances contained within an area designated as a superfund site' under New York or federal law 'may be commenced by the plaintiff within the period allowed pursuant to [§ 214-c] or

2

within three years of such designation of such an area as a superfund site, whichever is latest.'" Id. at 15 (quoting § 214-f). The Court found that Plaintiff's claims were timely under § 214-f because she commenced this action "less than a year and a half after New York designated the Superfund site in Hoosick Falls." Id.

The Court rejected Defendants' argument that § 214-f violated their due process rights under the New York State Constitution. Id. The Court noted that, in In re World Trade Center Lower Manhattan Disaster Site Litigation, the New York Court of Appeals stated that claim revival statutes like § 214-f satisfy due process requirements if the statute "was enacted as a reasonable response in order to remedy an injustice." Id. at 16 (quoting In re World Trade Ctr. Lower Manhattan Disaster Site Litig., 89 N.E.3d 1227, 1243 (N.Y. 2017)). The Court found that § 214-f was a reasonable response to an injustice because it allowed plaintiffs "who suffer latent injuries stemming from environmental contamination[] to pursue claims that would otherwise be time-barred simply because a defendant's tortious conduct was unknown," and because the statute gave plaintiffs a "modest" three years from the date of Superfund designation to bring a claim. Id. at 17–18. Therefore, the Court found that § 214-f did not offend Defendants' due process rights and denied their Motion to Dismiss. Id. at 18–19.

On February 21, 2018, Defendants moved to certify the February Order for interlocutory appeal, seeking review of the Court's decision that § 214-f did not violate due process. Mem. Plaintiff opposed the Certification Motion. Dkt. No. 38 ("Opposition").

### III.   LEGAL STANDARD

28 U.S.C. § 1292 allows the district court, when issuing an otherwise unappealable order, to permit an interlocutory appeal to the appropriate circuit court. Specifically, § 1292(b) states

3

that, when a district judge is "of the opinion that [an interlocutory] order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order." When a denial of a motion to dismiss (or, as in this case, a grant in part and denial in part) "'involves a new legal question or is of special consequence,' then the district court 'should not hesitate to certify an interlocutory appeal.'" Balintulo v. Daimler AG, 727 F.3d 174, 186 (2d Cir. 2013) (quoting Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100, 111 (2009)).

"However, interlocutory appeals 'are strongly disfavored in federal practice.'" Evolution Fast Food Gen. P'ship v. HVFG, LLC, No. 15-CV-6624, 2018 WL 1779377, at *4 (S.D.N.Y. Mar. 28, 2018) (quoting In re Ambac Fin. Grp., Inc. Sec. Litig., 693 F. Supp. 2d 241, 282 (S.D.N.Y. 2010)). A party may not seek interlocutory appeal "as a vehicle to provide early review of difficult rulings in hard cases." Id. (quoting In re Levine, No. 94-44257, 2004 WL 764709, at *2 (S.D.N.Y. Apr. 9, 2004)). Rather, "only 'exceptional circumstances will justify a departure from the basic policy of postponing appellate review after the entry of a final judgment.'" Id. (quoting In re Flor, 79 F.3d 281, 284 (2d Cir. 1996)). Moreover, "[t]he ultimate decision of whether to certify an interlocutory appeal 'is entirely a matter of discretion for the district court.'" Nypl v. JPMorgan Chase & Co., No. 15-CV-9300, 2018 WL 1276869, at *4 (S.D.N.Y. Mar. 12, 2018) (quoting In re Roman Catholic Diocese of Albany, N.Y., Inc., 745 F.3d 30, 36 (2d Cir. 2014)).

**IV.    DISCUSSION**

The Court declines to certify the February Order for interlocutory appeal because it finds no substantial ground for difference of opinion regarding the constitutionality of § 214-f. As stated earlier, § 214-f satisfies due process requirements if it was enacted "as a reasonable response in order to remedy an injustice." In re World Trade Ctr., 89 N.E.3d at 1243. The Court analyzes Defendants' challenges to the February Order under this framework.

**A. "Reasonable Response"**

   *1. Novel Legal Issue*

Defendants argue that, because the New York Court of Appeals' decision in In re World Trade Center only recently "clarified the standard for due process challenges to revival statutes," the constitutionality of § 214-f is a novel legal issue, and there consequently exists a substantial ground for difference of opinion. Mem. at 4–5. To begin with, Defendants mischaracterize In re World Trade Center as announcing a significant departure from prior caselaw discussing the constitutionality of revival statutes. In In re World Trade Center, the Court of Appeals summarized three of its prior decisions regarding due process requirements for revival statutes: Hymowitz v. Eli Lilly & Co., 539 N.E.2d 1069 (N.Y. 1989), Robinson v. Robins Dry Dock & Repair Co., 144 N.E. 579 (N.Y. 1924), and Gallewski v. H. Hentz & Co., 93 N.E.2d 620 (N.Y. 1950). 89 N.E.3d at 1242–43. The Court of Appeals stated that "[t]he salient facts in each of Robinson, Gallewski and Hymowitz fall into the same pattern. First, there existed an identifiable injustice that moved the legislature to act. . . . Second, in each case, the legislature's revival of the plaintiff's claims for a limited period of time was reasonable in light of that injustice." Id. at 1243. In other words, In re World Trade Center did not announce a novel

standard that rendered irrelevant wide swaths of prior caselaw. Rather, it clarified the applicable standard in a manner that explicitly acknowledged that prior jurisprudence on this issue was still good law, regardless of the specific wording those courts applied.

Finally, even if In re World Trade Center *had* announced a novel standard, "[t]he mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." Nypl, 2018 WL 1276869, at *4 (quoting In re Flor, 79 F.3d at 284). "Rather, '[i]t is the duty of the district judge . . . to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a *substantial* ground for dispute.'" In re Flor, 79 F.3d at 284 (quoting Max Daetwyler Corp. v. Meyer, 575 F. Supp. 280, 283 (E.D. Pa. 1983)).

### 2. Agency Action and Non-Delegation

Defendants also challenge the February Order by arguing that, because § 214-f ties the accrual of a claim to a decision by either the United States Environmental Protection Agency ("EPA") or the New York State Department of Environmental Conservation ("DEC") to designate a Superfund site, the statute is not a reasonable response to an injustice. Mem. at 5. Defendants made the same argument in support of their Motion to Dismiss. Feb. Order at 18. The Court was unpersuaded by this argument because "Defendants cite no cases to suggest that limitations periods must be triggered by parties' actions in order to be valid. In fact, New York cases suggest the opposite." Id. (citing Gallewski, 93 N.E.2d at 625, and Robinson, 144 N.E. at 583).

As with their Motion to Dismiss, Defendants cite no cases for that proposition in support of their Certification Motion. Rather, they try to distinguish the cases that the February Order

6

offered to suggest that revival statutes triggered by actions of third parties could still be reasonable. Mem. at 7–8 (citing Feb. Order at 18). However, the Court remains unpersuaded. To reiterate, Gallewski and Robinson both involved decisions by the Legislature to revive causes of action in response to actions by third parties. Gallewski, 93 N.E.2d at 625 (discussing the Legislature's decision to retroactively toll the statute of limitations in response to German occupation of the plaintiff's home country during World War II); Robinson, 144 N.E. (discussing a statute that revived expired causes of action in response to a decision by the Supreme Court). Defendants' observation that Gallewski and Robinson involved a decision by the Legislature to extend the statute of limitations, Mem. at 7–8, does not meaningfully distinguish the revival statutes at issue in those cases from § 214-f. Section 214-f still represents the Legislature's decision to revive certain expired claims, even if the trigger for each revival is dependent on agency action.

Furthermore, Defendants' argument that § 214-f is unreasonable because a Superfund designation "decision may occur at any time, including years or even decades after the events out of which a plaintiff's claim arises," Mem. at 6, is unpersuasive because this concern applies equally to any expired claim that could potentially be revived. Regardless of whether an agency's designation of a Superfund site revives a cause of action or whether a third party causes an event that prompts the Legislature to enact a revival statute, defendants may be subject to lawsuits for long-forgotten alleged wrongs. Similarly, in both cases, "the vagaries of time and memory" may impact the quality of available evidence. Ackerman, 644 N.E.2d at 1012. In short, the mere fact that the trigger for the revival of claims under § 214-f is agency action does not impact the

reasonableness of the statute, and does not show the existence of a substantial ground for difference of opinion.

Defendants also argue that § 214-f is unreasonable because it constitutes an impermissible delegation by the New York Legislature to EPA and DEC. Mem. at 6. This argument does not suggest that there is a substantial ground for difference of opinion. It is well-settled that, while "the Legislature cannot pass on its law-making functions to other bodies, . . . there is no constitutional prohibition against the delegation of power, with reasonable safeguards and standards, to an agency or commission to administer the law as enacted by the Legislature." Boreali v. Axelrod, 517 N.E.2d 1350, 1354 (N.Y. 1987) (quoting Matter of Levine v. Whalen, 349 N.E.2d 820, 822 (N.Y. 1976)).

Section 214-f provides that a personal injury action can be commenced within three years of the date of a Superfund site designation. Defendants do not argue that DEC or EPA lack "reasonable safeguards and standards" constraining the ability of these agencies to designate Superfund sites. Nor could they. New York Environmental Conservation Law § 27-1305 empowers DEC to designate a Superfund site if DEC determines that the site "[c]aus[es] or present[s] an imminent danger of causing irreversible or irreparable damage to the public health or environment" or if the site poses a "[s]ignificant threat to the public health or environment." N.Y. Envtl. Conserv. Law § 27-1305(1). CERCLA requires EPA to consider, among other things, "relative risk or danger to public health or welfare or the environment . . . , taking into account . . . the population at risk, the hazard potential of the hazardous substances at such facilities, the potential for contamination of drinking water supplies, the potential for direct human contact . . . and other appropriate factors." 42 U.S.C. § 9605(a)(8)(A).

New York courts regularly reject non-delegation challenges against statutes that permit agencies to exercise as much or more discretion than those at issue here. See Matter of Levine, 349 N.E.2d at 822 (upholding a statute that required the agency to consider "protection and promotion of the health of the inhabitants of the State" and to provide "fit and adequate" facilities); Matter of Sullivan Cty. Harness Racing Assn. v. Glasser, 283 N.E.2d 603, 606–07 (N.Y. 1972) (upholding statute that required the agency to issue licenses when the issuance would "be in the best interests of racing generally" and when "the public interest, convenience, or necessity" would be served). Because the statutes governing the designation of a superfund site by either DEC or EPA do not violate the non-delegation principle, neither does § 214-f.

For these reasons, the Court finds that Defendants have not demonstrated that there exist substantial grounds for disagreement regarding whether § 214-f was enacted as a "reasonable response" to an injustice.

**B.  Injustice**

Defendants also challenge the February Order by arguing that § 214-f was not enacted "in order to remedy an injustice." Mem. at 9 (quoting In re World Trade Ctr., 89 N.E.3d at 1243). In the February Order, the Court determined that "[§] 214-f was enacted to allow individuals such as Plaintiff, who suffer latent injuries stemming from environmental contamination, to pursue claims that would otherwise be time-barred simply because a defendant's tortious conduct was unknown." Feb. Order at 17. Defendants argue that this "conclusion overlooks the fact that" § 214-c, which "instituted a discovery rule for the latent effects of exposure to any substance," already addressed "this purported 'injustice.'" Mem. at 9 (quoting Hymowitz, 539 N.E.2d at 1073). Furthermore, Defendants argue that § 214-f was not enacted to remedy an injustice

9

because it arbitrarily revives claims for "plaintiffs who suffer latent injuries as a result of exposure to substances at a superfund site" while not reviving claims for plaintiffs who receive "any other types of latent injuries." Id. at 10. Neither of these arguments is convincing.

First, Defendants' opinion that § 214-c is sufficient for people injured in a manner similar to Plaintiff was not shared by the Legislature, which enacted § 214-f in part to ensure that "[i]ndividuals in Hoosick Falls should not be denied any legal recourse simply because the statute of limitations has run on a claim they never knew that they had." Feb. Order at 17 (quoting Sponsor Memo, S. 6824A (N.Y. 2016)). The Legislature was permitted to determine that § 214-c afforded an inadequate opportunity to people like Plaintiff, whose claims under that statute expired years ago. In light of the Court of Appeals' observation that, "[i]n the context of a claim-revival statute, there is no principled way for a court to test whether a particular injustice is 'serious' or whether a particular class of plaintiffs is blameless," In re World Trade Ctr., 89 N.E.3d at 1243, the Court rejects Defendants' reasoning.

Second, regarding Defendants' observation that § 214-f revives claims for plaintiffs in Superfund sites but not other plaintiffs who suffer from latent injuries, it is unclear why this would warrant the conclusion that the statute was not enacted to remedy an injustice. The Legislature is surely permitted to respond to society's numerous injustices in a piecemeal fashion. The Legislature is subject to no arbitrary and capricious requirement that prevents the sort of line-drawing that Defendants criticize. Moreover, due process cannot require that a claim revival statute should fail for underinclusively addressing injustice, because this requirement would result in the failure of nearly every conceivable revival statute. For instance, the revival statute in Gallewski would fail because the Legislature chose to revive claims for plaintiffs

whose countries were occupied by Germans during World War II, but not for plaintiffs who suffered occupation by other powers during other wars.

For these reasons, Defendants have not demonstrated that there exist substantial grounds for disagreement regarding the constitutionality of § 214-f. Accordingly, the Court denies Defendants' Motion to certify the February Order for interlocutory appeal.

### V.  CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Certification Motion (Dkt. No. 37) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   May 16, 2018
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge

11